UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NURAN INC., | § | |
|     *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 3:22-CV-1105-X |
| CITY OF DALLAS, | § § | |
|     *Defendant*. | § § § | |

## **MEMORANDUM OPINION AND ORDER**

    This case is a challenge by an apartment complex owner against the City of Dallas for allegedly violating federal and state laws protecting religious liberty. The owner claims that the City began unlawfully targeting it when the City discovered, among other things, that the owner had converted a laundry room into a Mosque. But predating this federal suit is the City's state court suit to enforce its zoning laws and permitting procedures.

    The specific motion before this Court is the plaintiff Nuran Inc.'s motion for a temporary restraining order and preliminary injunction. [Doc. No. 4]. The Court is likely to abstain from the case pursuant to *Younger v. Harris*[1] because Nuran's requested injunction would directly conflict with the existing state court injunction, and Nuran makes no showing that the state court case is an inadequate forum for its arguments. Accordingly, the Court **DENIES** the motion.

---

[1] 401 U.S. 37 (1971).

## I.   Factual Background

The plaintiff, Nuran Inc., owns over 600 apartments units in the Vickery Meadow neighborhood in Dallas, Texas. Two of Nuran's properties are at issue in this case: the Sunchase and Ivy apartments.[2] Nuran purchased the Sunchase in 1994 and the Ivy in 2010. The apartments are home to a large refugee community, which relies on various refugee assistance organizations and faith-based groups for support.

For the purposes of this motion, there are two key facts about the apartments. *First*, in 2006, Nuran constructed a building at the Sunchase with two community rooms (or spaces) "for the purpose of providing space for charitable organization to assist tenant refugees."[3] Myriad charitable organizations, including churches, have used the space since then. *Second*, at some point, Nuran converted one of the Ivy's laundry rooms into a Mosque/prayer room.

In 2012, the City sued Nuran in state district court, alleging that the properties violated "many provisions of the City's minimum property standards . . . and failed to obtain required permits and certificates of occupancy."[4] In that litigation, Nuran agreed to, and the state court entered, a temporary injunction requiring Nuran to cure the violations, obtain permits and certificates of occupancy, and pay civil penalties.

---

[2] 7317 Holly Hill Drive and 7225 Fair Oaks Avenue, respectively.

[3] Doc. No. 1 at 4.

[4] Doc. No. 12 at 7.

Later, thanks to tips provided by the aid organizations that operate there, the City "became aware of the present state of [Nuran's] properties."[5] The City began investigating and inspecting the properties and documented over seventy (alleged) violations of the Dallas City Code and the Dallas Fire Code, including "rat infestations, unaddressed water leaks, unworkmanlike repairs, sewer caps covered in cement, and no basic life safety systems [like] smoke alarms and fire extinguishers."[6] As for the community service spaces and the Mosque/prayer room, the City faulted Nuran for failing to obtain the necessary building permits and certificates of occupancy. The City states that such permits and certificates are necessary because those spaces are not "customarily incidental" to the multifamily apartment use and not for "the exclusive use of the [apartment's] residences and their guests" as required by Dallas City Code Section 51A-4.209(b)(5)(E)(i).

In November 2021, the City again sued Nuran in state district court to address these issues.[7] In March 2022, Nuran agreed to a temporary injunction.[8] Among other things, the state court ordered and Nuran agreed to "immediately implement and maintain on a continuing basis . . . measures to abate or repair any identified violations on The Properties to bring them into compliance . . . with the Dallas City Code and Dallas Fire Code"; to "obtain necessary permits for all unpermitted

---

[5] *Id.*

[6] *Id.*; *see also* Doc. No. 13 at 8–10 (City's First Amended Petition and Request for Temporary and Permanent Injunctions).

[7] The Court can and does take judicial notice of the state court proceedings. *See Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019).

[8] Doc. No. 13 at 177–84.

modifications (e.g., conversion of Ivy's laundromat to a prayer room, among others)"; and to "either immediately cease or continue to cease occupancy and use of any unpermitted uses including but not limited to the Community Service Center and Prayer Room on The Properties without a certificate of occupancy."[9] The state court also set an inspection schedule with various deadlines. On May 6, 2022, the City notified Nuran of its failure to the comply with the state court's agreed temporary injunction.

On May 17, 2022, Nuran filed in the state court a "Motion to Recognize Voidness of, and to Dissolve, the Temporary Injunction."[10] In that motion, Nuran argues that the temporary injunction to which it had agreed is void under Rule 683 of the Texas Rules of Civil Procedure because it lacks specificity. Nuran did not assert any other grounds for relief from the injunction.

One day later, Nuran filed its complaint in this Court. Nuran alleges that "[u]ntil recently, [it] had a stellar inspection record with the City."[11] Nuran explains that it "has worked with numerous organizations seeking to improve the lives of others" and built the community service spaces "to be used for the purpose of providing space for charitable organizations to assist tenant refugees."[12] Various aid organizations operate on the property and serve refugees by giving out food, teaching children to read, teaching children about religion, providing supplies, and facilitating

---

[9] *Id.* at 178, 180.

[10] *Id.* at 209–15.

[11] Doc. No. 1 at 1.

[12] *Id.* at 4.

computer training and other job-skills programs. Nuran states that it converted the laundry room into a Mosque/prayer room "[t]o accommodate [its Muslim tenants'] religious needs."[13]

What Nuran characterizes as a positive relationship with the City "changed when individuals in the City Attorneys' Office began a campaign of harassment motivated by racial and religious animus and prejudice."[14] Nuran alleges that the City's concerns are "pretextual" and a "campaign against diversity."[15] Nuran alleges that the City inspected the Mosque on a Friday (the "weekly Holy day for Muslims"), "demanded that the Mosque be closed," and sought "to find any trumped up minor code violation that could be concocted."[16] Finally, Nuran alleges that the City "expelled" from the property various aid organizations and church groups that have been using the community service spaces.[17] Nuran charges the City with violating the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution, the Fair Housing Act, and the Texas Religious Freedom Restoration Act.

Nuran also filed the instant motion for a temporary restraining order and preliminary injunction.[18] Nuran seeks an "order and injunction restraining and enjoining the City . . . from interfering with or preventing prayer services on

---

[13] *Id.* at 6.
[14] *Id.* at 1.
[15] *Id.* at 8.
[16] *Id.* at 7.
[17] *Id.*
[18] Doc. No. 4.

Plaintiff's property or the operation of religiously motivated nonprofits."[19]  Nowhere in the complaint, motion, or accompanying brief did Nuran's counsel disclose the existence of the state court's injunction commanding Nuran to "cease or continue to cease [non-compliant] occupancy and use of . . . the Community Service Center and Prayer Room on The Properties."[20]  This constitutes a disappointing and flagrant violation of counsel's duty of candor to the Court.

In response, the City argues that the Court should deny the motion under the *Younger* abstention doctrine.

## II.   Legal Standard

An applicant seeking a temporary restraining order "must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest."[21]  A temporary restraining order "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."[22]  The applicant bears

---

[19] *Id.* at 1.

[20] Doc. No. 13 at 180.

[21] *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012); *see also Liccardi v. Smith*, No. 3:21-CV-0314-E (BH), 2021 WL 5184092, at *2 (N.D. Tex. Oct. 19, 2021) (Ramirez, J.) ("[T]he plaintiff must satisfy the substantive requirements for a preliminary injunction to obtain a TRO."), *report and recommendation adopted sub nom. Liccardi v. Fed. Express Corp.*, No. 3:21-CV-00314-E, 2021 WL 5140900 (N.D. Tex. Nov. 4, 2021) (Brown, J.).

[22] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (cleaned up).

the burden of persuasion on all four elements, and failure on any one of them warrants denial.[23]

The *Younger* abstention doctrine "is based on considerations of equity, comity, and federalism."[24]  "[I]t applies only to 'three exceptional categories' of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and 'pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'"[25]  Generally, the *Younger* doctrine requires federal courts to decline to exercise their jurisdiction "when three conditions are met: (1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'"[26]

### III. Analysis

The Court concludes that Nuran fails to establish a likelihood of success on the merits.  The Court finds it likely that it will abstain from this matter entirely

---

[23] *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

[24] *DeSpain v. Johnston*, 731 F.2d 1171, 1175–76 (5th Cir. 1984).

[25] *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013) (cleaned up)).

[26] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

pursuant to the *Younger* abstention doctrine. *Younger* applies to this civil proceeding because it is akin to a criminal prosecution.[27]

First, there is certainly an ongoing state judicial proceeding that existed before Nuran initiated this federal action. It appears that the relief requested in the complaint generally and in this motion specifically would indeed interfere with that state proceeding. As explained above, the state court's injunction requires Nuran to cease its non-compliant uses of the community service spaces and the Mosque/prayer room (by allowing members of the public other than residents and their guests to use the space and allowing non-incidental use of the spaces) and to obtain the necessary permits and certificates of occupancy. The order that Nuran seeks from this Court would require basically the opposite: it would enjoin the City "from interfering with or preventing prayer services on Plaintiff's property or the operation of religiously motivated nonprofits."[28]

Second, the state proceeding implicates a state interest important to all cities not named Houston—namely, the City's ability to enforce its zoning ordinances as well as its permitting procedures.[29]

Third, the Court also finds it likely that the state court case provides an adequate opportunity for Nuran to litigate its constitutional and related claims. As

---

[27] *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05 (1975) (federal court should not interfere in state court civil nuisance proceeding); *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 437 (federal court should not interfere in county bar association's administrative proceeding concerning lawyer's ethical violations).

[28] Doc. No. 4 at 1.

[29] *See Huffman*, 420 U.S. at 604 ("[T]h[is civil] proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. Thus, an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a

explained above, Nuran did not raise any of its constitutional and statutory arguments as a basis for its motion to dissolve the state court's temporary injunction, and it has not explained that it sought any other forms of relief from the state court. Indeed, Nuran appears to have not raised a substantive legal argument at all; it argued that the injunction was void based on the Texas Rules of Civil Procedure.[30] The Supreme Court has explained that "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."[31]

Moreover—not only does Nuran bear the burden of persuasion on each element for a temporary restraining order—but it is also specifically required to "establish th[e] contention" that the state court would *not* provide an adequate opportunity to assert its federal claims.[32] Nuran has failed to do so. In response to the City's argument that *Younger* applies, Nuran argues that an injunction from this Court would not interfere with the state proceeding (*Younger*'s first prong), but makes no

---

criminal proceeding."); *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 480 (8th Cir. 1998) ("[I]t is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest."); *Izzo v. Borough of River Edge*, 843 F.2d 765, 769 (3d Cir. 1988) ("We share . . . the federal judiciary's traditional respect for local administration and control of land use regulation. Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to municipalities. . . . Land use policy customarily has been considered . . . an area in which the tenets of federalism are particularly strong.").

[30] Doc. No. 13 at 209–15.

[31] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

[32] *Bice*, 677 F.3d at 718–719 ("Because he did not attempt to bring his [federal] claim in state court, Bice bears the burden of establishing this contention [*Younger*'s third prong]." (citing *Pennzoil*, 481 U.S. at 14)).

argument with respect to *Younger*'s third prong. Thus, Nuran has failed to carry its burden.

## IV. Conclusion

Because the Court finds its likely that it will abstain from this matter pursuant to the *Younger* abstention doctrine, the Court **DENIES** Nuran's motion for a preliminary injunction and temporary restraining order.

**IT IS SO ORDERED** this 9th day of June, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE