UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NURAN INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF DALLAS, <br><br> *Defendant*. | § <br> § <br> § <br> § <br> § Civil Action No. 3:22-CV-1105-X <br> § <br> § <br> § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

Nuran Inc. ("Nuran") owns apartment complexes in Dallas. After the City of Dallas ("the City") inspected those complexes, the City sued Nuran in state court, alleging "violations of the Dallas City Code and Dallas Fire Code" and "building modifications" sans permits or certifications.[1] Nuran then initiated the instant suit, alleging that the City violated federal and state laws protecting religious liberty. The City now moves to dismiss Nuran's complaint. [Doc. No. 16]. The Court **GRANTS** the motion, **DISMISSES WITHOUT PREJUDICE** Nuran's claims.

**I. Factual Background**

Nuran owns two apartment complexes—Sunchase Square and Ivy—in Dallas. For years, Nuran has modified those complexes to house and serve refugees. For instance, Nuran constructed a building containing two community rooms and has allowed Refugee Resources and the Islamic Circle of North America ("ICNA") to use

---

[1] Doc. No. 13 at 8.

1

those rooms. Likewise, because "the Dallas area has seen an increase in refugees from predominantly Muslim communities," Nuran transformed "a former laundry room" in Ivy "into a Mosque."[2]

In April 2021, the City inspected those properties and sued Nuran in state court,[3] alleging "rat infestations, [] water leaks, . . . and no basic life safety systems [like] smoke alarms and fire extinguishers."[4] The City also asserted that Refugee Resources and ICNA operated in Sunchase Square "without required Certificates of Occupancy."[5] Lastly, the City noted that the "prayer room" in Ivy lacked "the conditions necessary to ensure that [it was] safe for group occupancy."[6]

In March 2022, Nuran agreed to, and so the state court issued, a temporary injunction requiring Nuran to "abate or repair any identified violations," to "obtain necessary permits for . . . conversion of the Ivy's laundromat to a prayer room," and to cease use of the "Prayer Room . . . without a certificate of occupancy."[7] But that agreement didn't last long. On May 6, 2022, the City notified Nuran that Nuran

---

[2] Doc. No. 1 at 6.

[3] Nuran doesn't dispute the authenticity of the state-court suit, so the Court can consider it. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (recognizing that courts determining their subject matter jurisdiction may consider "undisputed facts evidenced in the record"). Moreover, the Court can "take judicial notice of the public records in . . . prior state court proceedings." *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (cleaned up). Thus, the Court takes judicial notice of the City's complaint.

[4] Doc. No. 12 at 7.

[5] Doc. No. 13 at 8.

[6] *Id.* at 9.

[7] *Id.* at 178, 180.

2

was violating the injunction. On May 17, 2022, Nuran formally asked the state court to dissolve the injunction, and on May 18, 2022, Nuran filed the instant suit.

Nuran now alleges that the City's actions were discriminatory. Specifically, Nuran claims the City sent inspectors to its mosque on Friday—"[t]he weekly Holy day for Muslims"—and identified "trumped up minor code violation[s]" in an effort to shut down the mosque.[8] Nuran claims that the City continues to "unlawfully enter[] into apartments while the lady of the house [is] alone," which is a problem because many of the refugees believe that "women are not supposed to interact with strangers without the presence of a male family member."[9] Nuran brings claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Texas Religious Freedom Restoration Act ("TRFRA"), the Fair Housing Act ("FHA"), 42 U.S.C. § 1983, and the First Amendment.

Nuran sought a temporary restraining order, which the Court denied on the ground that "[t]he Court [was] likely to abstain from the case pursuant to *Younger v. Harris*."[10] Since then, the state court has dissolved its temporary injunction.

The City now moves to dismiss Nuran's complaint for want of jurisdiction.

---

[8] Doc. No. 1 at 7.

[9] *Id.* at 7.

[10] Doc. No. 15 at 1; *see* 401 U.S. 37 (1971).

## II. Legal Standard

The City moves to dismiss for "lack of subject-matter jurisdiction."[11] "Federal courts are courts of limited jurisdiction."[12] "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[13] In determining whether subject-matter jurisdiction exists, courts can analyze "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[14]

## III. Analysis

Nuran's claims fail due to (A) *Younger* abstention and (B) ripeness.

### A. Younger Abstention

*Younger v. Harris*[15] said that federal courts generally should abstain from enjoining certain state court proceedings. Specifically, *Younger* abstention prohibits federal courts from enjoining "three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."[16] *Younger*

---

[11] FED. R. CIV. PROC. 12(b)(1).

[12] *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

[13] *Id.* (citation omitted).

[14] *Williamson*, 645 F.2d at 413.

[15] 401 U.S. at 43–44.

[16] *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (cleaned up).

abstention is at issue here because the City's state-court action is a "civil enforcement proceeding" in that second category.[17]

Nuran disagrees, insinuating that *Younger* abstention applies only when the "civil case [is] brought by the sheriff and district attorney" or implicates a "criminal statute."[18] But that's wrong. "*Younger* [is] fully applicable to noncriminal judicial proceedings when important state interests are involved."[19] Thus, *Younger* applies to "bar disciplinary hearings,"[20] "state administrative proceedings," and even civil enforcement of "a state nuisance statute."[21]

Next, the Court applies *Younger*. *Younger* requires federal courts to decline to exercise jurisdiction when "(1) the federal proceeding would interfere with an ongoing state [] proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges."[22] Nuran's suit meets each condition.

First, the equitable relief that Nuran seeks would interfere with the state court proceeding. To determine "whether the federal proceeding would interfere with the state proceeding, [courts] look to the relief requested and the effect it would have on

---

[17] *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05 (1975) (concluding that a federal court should not interfere in a state-court nuisance proceeding).

[18] Doc. No. 19 at 9 (cleaned up).

[19] *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

[20] *Id.*

[21] *Thomas v. Tex. State Bd. of Med. Examiners*, 807 F.2d 453, 455 (5th Cir. 1987) (cleaned up).

[22] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (cleaned up).

5

the state proceedings."²³ For instance, Nuran seeks a "permanent injunction that would prohibit the City from interfering with . . . the operation of . . . [ICNA] [and] Refugee Resources" on its property.²⁴ But the City's state-court suit seeks to enjoin Nuran's code violations, including its "changing the use of a building . . . without obtaining a certificate of occupancy."²⁵ And the City identifies "Refugee Resources and [ICNA]" as two entities whose presence violates that code.²⁶ Likewise, Nuran seeks a "permanent injunction that would prohibit the City from interfering with [] prayer services on [Nuran's] property."²⁷ But the City's state-court suit identifies Nuran's "prayer room" as a code violation it seeks to enjoin.²⁸ In sum, the City's state-court suit seeks to interfere with the presence of Refugee Resources, ICNA, and the prayer room on Nuran's property sans the required paperwork, while Nuran's suit seeks to stop that interference. Consequently, Nuran's requested relief would have the indirect effect of enjoining the City from pursuing its state-court action. Accordingly, Nuran's requested equitable relief would interfere with the state-court proceeding.

Nuran disagrees, contending that he "is not asking this Court to enjoin a state court judge . . . or to otherwise prevent any party from seeking relief in the state court

---

²³ *Id.* at 717 (cleaned up).

²⁴ Doc. No. 1 at 12.

²⁵ Doc. No. 13 at 15.

²⁶ *Id.* at 9.

²⁷ Doc. No. 1 at 12.

²⁸ Doc. No. 13 at 9.

6

proceeding."[29] But Nuran misunderstands the law. To determine whether the instant case would interfere with the state-court suit, this Court must examine the "effect" of Nuran's requested relief—"regardless of whether the relief ***targets the conduct of a proceeding directly***."[30] Thus, the Fifth Circuit has foreclosed Nuran's argument that the instant suit could interfere with the state-court suit only if he had requested an injunction directly constraining conduct in the state-court proceeding.

Next, Nuran notes that, in denying his *Application for a Temporary Restraining Order*, the Court recognized that the state court's pending injunction "require[d] basically the opposite" of the relief Nuran sought in this Court.[31] Because that "injunction is no more," he argues, "this Court would not . . . interfere with[] the pending state court proceeding" by providing his requested injunctive relief.[32] Although the injunction was a prime example of the sort of interference at issue in this case, its dissolution is inapposite. Nuran's requested relief still seeks to constrain the City's behavior in a manner that would hobble the City's ability to pursue its suit.

Turning to the second *Younger* factor, the City "has an important interest in" enforcing its zoning ordinances and permitting procedures.[33] "[I]t is well-established

---

[29] Doc. No. 19 at 10.

[30] *Bice*, 677 F.3d at 717 (cleaned up) (emphasis added).

[31] Doc. No. 15 at 8.

[32] Doc. No. 19 at 11.

[33] *Bice*, 677 F.3d at 716.

that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest."[34]

Nuran disagrees, citing a Third Circuit case holding that "the mere fact that the factual background of a case arose out of a land use dispute is not enough to say that the . . . state proceedings [] involve important state interests."[35] But that same case agrees that it is "often [] appropriate to invoke abstention to avoid deciding land use cases in federal court."[36] And that case merely held that land-use issues were not central to that case because the requested equitable relief would not "invalidat[e] the [state's] land use policies themselves."[37] In other words, the Third Circuit requires courts faced with a land-use case to "examine the facts carefully to determine [that] the essence of the claim" actually does pertain to land use.[38] Nuran doesn't dispute that land-use issues form the essence of this case.

Third, Nuran concedes that it "could raise the issues in this case in the state court proceeding," and that, accordingly, the third *Younger* factor "is met."[39]

Because all three factors are met, the Court **DISMISSES WITHOUT PREJUDICE** Nuran's claims for equitable relief.

---

[34] *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 480 (8th Cir. 1998); *see also Izzo v. Borough of River Edge*, 843 F.2d 765, 769 (3d Cir. 1988) ("Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to municipalities . . . . Land use policy customarily has been considered . . . an area in which the tenets of federalism are particularly strong.").

[35] *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005).

[36] *Id.*

[37] *Id.* at 410.

[38] *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 748 (3d Cir. 1982).

[39] Doc. No. 19 at 11.

8

But that's not the end of the matter. In addition to equitable relief, Nuran seeks "damages,"[40] and "*Younger* is not applicable to claims for damages."[41] Where a plaintiff seeks equitable relief barred by *Younger*, along with damages, two options are available. First, a court may "stay the claims for damages pending the outcome of the state proceedings."[42] Second, if the complaint fails to "allege[] injuries under federal law sufficient to justify the District Court's retention of jurisdiction," then the Court may dismiss those claims outright.[43] Accordingly, the Court "proceed[s] to decide whether [Nuran's] claim[s] for damages should be dismissed" for want of jurisdiction.[44]

## B. Ripeness

To assure itself of jurisdiction, the Court must ensure that this case is ripe. "A case is generally ripe if any remaining questions are purely legal ones."[45] A case is not ripe if the issue presented would "be clarified by further factual development."[46] In that inquiry, courts must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[47]

---

[40] Doc. No. 1 at 17.

[41] *Boyd v. Farrin*, 575 F. App'x 517, 519 (5th Cir. 2014) (per curiam).

[42] *Id.*; *accord Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[T]he District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.").

[43] *Boyd*, 575 F. App'x at 519.

[44] *Id.* (citation omitted).

[45] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987).

[46] *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985).

[47] *Id.* (cleaned up).

9

When a plaintiff's failure to obtain a permit causes a land-use dispute, ripeness concerns come to the fore. For instance, in the Takings Clause context, the Supreme Court has required governmental entities to "arrive[] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question" before such claims are ripe.[48] Likewise, the Fifth Circuit has applied that finality standard to a regulatory-takings claim, where a permitting entity "had not yet reached a decision about [the land-use] permits."[49] And courts have applied that same analysis to a cornucopia of claims—including First Amendment and RLUIPA claims—when those claims center on a failure to obtain permitting.[50]

And that makes sense. Ripeness hinges on whether "further factual development is required."[51] When it's uncertain whether a governmental entity will

---

[48] *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Nuran asserts that *Knick* overruled *Williamson*'s finality requirement. Not so. "*Knick* overruled *Williamson County*'s requirement that a property owner first litigate a takings claim in state court. But it did not alter the requirement for a final decision from the regulator before any litigation is commenced." *DM Arbor Court, Ltd. v. City of Hous.*, 988 F.3d 215, 218 n.2 (5th Cir. 2021) (citation omitted).

[49] *DM Arbor*, 988 F.3d at 219.

[50] *See, e.g.*, *Mercado Azteca, L.L.C. v. City of Dall.*, No. 3:03-CV-1145-B, 2004 WL 2058791, at *3 (N.D. Tex. Sept. 14, 2004) (Boyle, J.) ("It is true that due process and equal protection claims are not ripe until there has been a final decision by the governmental entity."); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 976 (9th Cir. 2011) (applying "the *Williamson County* final decision requirement [] and approv[ing] the dismissal of the Church's RLUIPA claims as unripe for lack of a final decision"); *Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 217 (3d Cir. 2009) ("Subsequent decisions applied [*Williamson*'s] ripeness requirement to land use disputes implicating other constitutional claims" along with claims under RLUIPA); *Life Covenant Church, Inc. v. Town of Colonie*, No. 1:14-CV-1530 (LEK/DJS), 2017 WL 4081907, at *6 (N.D.N.Y. Sept. 13, 2017) (recognizing that "a plaintiff in a land-use case must obtain a final decision before commencing suit" even for "zoning challenges based on the First Amendment rights of assembly and free exercise" (cleaned up)).

[51] *New Orleans Pub. Serv.*, 833 F.2d at 587.

10

permit a plaintiff's proposed use of its property, more factual development is necessary to determine whether the plaintiff has a case.

Applying that finality standard here, Nuran has not pled a ripe controversy. Each of Nuran's claims is premised on the notion that the City injured Nuran by (1) attempting to prohibit use of the mosque, (2) attempting to prohibit ICNA from operating on Nuran's property, and (3) attempting to prohibit Refugee Resources from operating on Nuran's property.[52] But Nuran now concedes that the City didn't prohibit those activities outright—it merely demanded that Nuran obtain "certificates of occupancy or permits" to continue those activities.[53] Although Nuran disagrees with those requirements, Nuran doesn't allege that it has even attempted to obtain the necessary permits.[54] Although the complaint does allege that Nuran has "attempted to secure certificates of occupancy,"[55] it doesn't allege that the City

---

[52] Doc. No. 1 at 11 (premising Nuran's RLUIPA claim on the City's "(1) contending that the Dallas Development Code precludes tenants from utilizing the Mosque . . . on Plaintiff's property for purposes of prayer; (2) contending that the Dallas Development Code precludes the [ICNA] from providing religiously motivated charitable relief and programs to refugees in a community room on Plaintiff's property; and (3) contending that the Dallas Development Code precludes Refugee Resources from providing religiously motivated educational and other charitable programs to refugees in a community room on Plaintiff's property"); *id.* at 13 (premising Nuran's Section 1983 claim on the City's "preventing Muslims from worshiping and exercising their religion at the Mosque on Plaintiff's property" and also "the City's harassment campaign [against] the [ICNA] and Refugee Resources"); *id.* at 15 (premising Nuran's FHA claim on the City's "deny[ing] refugees the opportunity to pray as a community" and seeking "to expel religiously motivated charities from Plaintiff's property"); *id.* at 16 (premising Nuran's TRFRA claim on the City's "clos[ing] the Mosque," "contend[ing] that the Mosque should be closed," and "precluding religious[ly] motivated non-profit organizations from operating on Plaintiff's property").

[53] Doc. No. 19 at 15.

[54] *See generally* Doc. No. 1.

[55] Doc. No. 1 at 8.

11

has rejected those applications.[56] In short, as an analogous Third Circuit opinion held, this Court cannot ascertain whether Nuran has suffered any "injury without a final determination as to whether the [activities in question] will be permitted on the property."[57]

Because Nuran's claims are not ripe, the Court **DISMISSES WITHOUT PREJUDICE** Nuran's claims for damages.

### IV. Conclusion

The Court **DISMISSES WITHOUT PREJUDICE** Nuran's claims for injunctive and monetary relief.

**IT IS SO ORDERED** this 24th day of January, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[56] The Complaint alleges that a City employee said that such certificates are "not required for tenants to use the property for religious purposes." *Id.* at 8. But the City claims that it has evidence that the non-profits are "open to the wider [] community." Doc. No. 16 at 18. Regardless of that dispute, Nuran hasn't alleged that the City unfavorably adjudicated its application for a certificate.

[57] *Congregation Anshei*, 338 F. App'x at 219.